NOT FOR PUBLICATION

**FILED**

UNITED STATES COURT OF APPEALS

JUL 31 2026

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

LORENY ALEJANDRA AGUILAR
MALDONADO; ALVINO RODAS
BARRIOS; D. C. R. A.; Y. A. R. A.; A. A.
R. A.,

Petitioners,

v.

TODD BLANCHE, Acting Attorney
General,

Respondent.

No. 25-5901

Agency Nos.
A249-308-532
A249-308-531
A249-308-533
A249-308-534
A249-308-535

MEMORANDUM[*]

On Petition for Review of an Order of the
Board of Immigration Appeals

Submitted July 8, 2026[**]
San Francisco, California

Before: PAEZ, TALLMAN, and BENNETT, Circuit Judges.
Partial Concurrence and Partial Dissent by Judge PAEZ.

Lead petitioner Loreny Alejandra Aguilar Maldonado, her husband, Alvino

Rodas Barrios, and their minor children seek review of the denial of their

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**] The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

applications for asylum and withholding of removal.[1] We have jurisdiction under 8 U.S.C. § 1252, and we deny the petition.

1. The Board of Immigration Appeals (BIA) did not engage in impermissible fact finding regarding the murder of Aguilar Maldonado's father. The record reflects that the immigration judge (IJ) considered this evidence in his decision, both in the background—which discussed her father's murder, the perpetrator's release from prison, and Petitioners' belief that the threats were related to the murder—and the persecution analysis. The IJ specifically noted that he considered all of the record evidence, and there is no indication that he did not do so either in his past or future persecution analysis. *See Almaghzar v. Gonzales*, 457 F.3d 915, 922 (9th Cir. 2006). Further, the BIA properly reviewed the IJ's factual findings and ultimate conclusions under the appropriate standards.

2. Substantial evidence supports the agency's determination that Petitioners failed to establish the government was unwilling or unable to control the unidentified private actor they feared. *See Singh v. Garland*, 57 F.4th 643, 652 (9th Cir. 2023) ("The source of the persecution must be the government or forces that the government is unwilling or unable to control." (citation omitted)), *abrogated on other grounds by Urias-Orellana v. Bondi*, 607 U.S. 537 (2026). In response to

---

[1] Petitioners do not challenge the denial of their applications for protection under the Convention Against Torture.

Rodas Barrios's complaint regarding the threats, a prosecuting attorney opened an investigation, interviewed Rodas Barrios, issued a report, and referred the matter to the local tribunal. The IJ found that these were reasonable steps, particularly because Rodas Barrios did not specifically identify or share his suspicions regarding the caller. The record evidence does not compel the contrary conclusion that Petitioners were harmed by forces the Guatemalan government was unwilling or unable to control. *See Nahrvani v. Gonzales*, 399 F.3d 1148, 1154 (9th Cir. 2005).

3. Petitioners argue that the agency erred by failing to adjudicate their humanitarian asylum claim. However, to be eligible for humanitarian asylum, "an applicant must still establish past persecution on account of a protected ground." *Belishta v. Ashcroft*, 378 F.3d 1078, 1080 (9th Cir. 2004); *see* 8 C.F.R. § 1208.13(b)(1)(iii). At the evidentiary hearing, Petitioners' counsel waived any claim that Aguilar Maldonado's childhood sexual abuse constituted past persecution on account of a protected ground. And, as discussed above, substantial evidence supports the finding that Petitioners failed to establish past persecution based on the threats. Accordingly, the BIA did not err in its conclusion that Petitioners therefore necessarily failed to establish threshold eligibility for humanitarian asylum.

**PETITION FOR REVIEW DENIED.**

*Aguilar Maldonado, et al. v. Blanche*, No. 25-5901

PAEZ, Circuit Judge, concurring in part and dissenting in part:

Because the immigration judge ("IJ") and Board of Immigration Appeals ("BIA") committed reversible legal error by failing to consider highly probative evidence (1) connecting Loreny Aguilar Maldonado's ("Aguilar Maldonado") father's murder to the threats made against her, and (2) demonstrating the Guatemalan government's inability and unwillingness to control her persecutors, I would grant the petition in part and remand Aguilar Maldonado's asylum and withholding of removal claims for further consideration.[1] *See Cole v. Holder*, 659 F.3d 762, 771–72 (9th Cir. 2011).

1.      As I read the record, the agency failed to consider highly probative evidence connecting Aguilar Maldonado's father's murder to the threats made against her. *See id.*  The IJ's cursory statement that it "fully considered all the evidence in the record" is insufficient, given the highly probative evidence that the IJ failed to mention in his decision. *See id.* ("[W]here there is any indication that the [IJ] did not consider all of the evidence before it [such as failing to mention highly probative evidence or misstating the record], a catchall phrase does not suffice.").  The evidence the IJ ignored consists of a series of facts linking the 2022

---

[1] I concur in the majority's disposition to the extent it denies the petition as to Alvino Rodas Barrios's and his minor children's independently filed claims.

threats to the 2005 kidnapping and murder of Aguilar Maldonado's father. When Aguilar Maldonado's father sought to leave a criminal group in 2005, the group threatened him with death and stationed vehicles outside of his family's home. Aguilar Maldonado's father then disappeared, and one week later, he was found brutally murdered. Aguilar Maldonado's mother reported leaders of the group to the police, who were prosecuted and imprisoned, including "Fito." In response to the police report and prosecution, the group continued to threaten the family, forcing them to move frequently throughout Aguilar Maldonado's childhood.

Shortly after Fito's release in 2022, Aguilar Maldonado's husband, Alvino Rodas Barrios ("Rodas Barrios"), received a phone call threatening Aguilar Maldonado and her daughters with death. The caller said he was "watching" the family and that Aguilar Maldonado and her children would be kidnapped and returned "in pieces inside nylon bags." The caller used a name for Aguilar Maldonado that only her late father had used ("Alejandra")—and that only his former criminal associates would have known—and threatened to kill her and her daughters in a manner reminiscent of her father's murder. Rodas Barrios offered to pay for their safety, but his offer was rejected. He later received additional death threats against his family via text messages, referring to his wife as "Ally." On at least ten occasions, vehicles parked near Aguilar Maldonado's home to

"monitor" it, just like the vehicles seen near her family's home prior to her father's kidnapping and murder.

While the IJ mentioned the father's murder and Fito's release from prison, the IJ failed to mention *any* of the evidence linking the threats against Aguilar Maldonado to her father's former criminal group. Further, the BIA asserted that Aguilar Maldonado "presented no evidence substantiating [the] claim" that her father's murderers were responsible for the threats against her. But this is a misstatement of the record, which contains ample circumstantial evidence of the group's involvement. *See Madrigal v. Holder*, 716 F.3d 499, 505 (9th Cir. 2013) (explaining that an asylum petitioner may "satisfy [her] burden with circumstantial evidence"). The IJ and BIA also misstated the record in determining that the threats made against Aguilar Maldonado "were not accompanied by . . . near violence." The positioning of surveillance cars outside of Aguilar Maldonado's house to monitor her, just as vehicles were positioned before her father's kidnapping and murder, were obvious threats of violence. The agency's lack of analysis and affirmative misstatements of the record are both indications that the agency failed to consider all the evidence and constitute legal error warranting remand. *See Diaz v. Bondi*, 129 F.4th 546, 554 (9th Cir. 2025). When this highly probative evidence is fully considered it is reasonably likely that the IJ would

3

conclude that Aguilar Maldonado suffered persecution. *See Sharma v. Garland*, 9 F.4th 1052, 1062 (9th Cir. 2021).

**2.** The agency also failed to consider highly probative evidence of the Guatemalan government's ability and willingness to control Aguilar Maldonado's persecutors. "When the government has promised future action but taken none, we have concluded the government was either unable or unwilling to exercise such control." *Antonio v. Garland*, 58 F.4th 1067, 1077 (9th Cir. 2023).

Here, the IJ and BIA failed to consider evidence of three promised actions unfulfilled by the Guatemalan government. First, neither the IJ nor the BIA mentioned the police's repeated, empty promises to send patrol cars to protect Aguilar Maldonado's house. This failure to follow up with patrol cars allowed the "harassment [to] continue[] after police were made aware." *Antonio*, 58 F.4th at 1078. Second, neither the IJ nor the BIA considered the police's failure to adequately investigate Rodas Barrios's police report. *See Mashiri v. Ashcroft*, 383 F.3d 1112, 1121 (9th Cir. 2004). The IJ mischaracterized the record by relying on "[Rodas Barrios's] inability to identify his attackers" to excuse the lack of investigation. Although Rodas Barrios did not provide a name, he shared that the caller was a male and provided the caller's phone number. This information provided the police "at a minimum[,] a place to begin their investigation," *Diaz*, 129 F.4th at 555, but the record is void of any evidence that the police investigated

4

the caller. When Rodas Barrios received additional threats, the police did not jumpstart the investigation—they merely edited the initial report to account for the texts received.

Third, the IJ erred by relying on the referral to a local tribunal, even though "[n]o record evidence indicate[d] whether the criminal referral . . . led to any arrests, criminal prosecution, or other action by authorities to minimize the threats against [Aguilar Maldonado]." *Antonio*, 58 F.4th at 1077. Fito's prior prosecution, while significant, apparently was the genesis of the threats against Aguilar Maldonado's family, which grew more specific upon his release. *See Diaz*, 129 F.4th at 555. Further, there is no record evidence that shows the referral to the local tribunal was effective in controlling Aguilar Maldonado's persecutors. But what the record does show is that just four months after she fled, the prosecutor assigned to her case was himself murdered by gang members, while investigating gang activity, in the same location that Aguilar Maldonado's father was found murdered by gang members. Given the record evidence, it is not clear how the referral to the local tribunal provided any protection to Aguilar Maldonado and her family.

Because the agency failed to consider highly probative evidence of Aguilar Maldonado's asylum and withholding of removal claims, I would grant the petition in part and remand to the IJ to address these legal errors. *See Singh v. Garland*,

5

118 F.4th 1150, 1165 (9th Cir. 2024) ("[W]hen the agency commits legal error . . . we do not ignore the error to see if substantial evidence nevertheless supports the agency's determination.") (citation modified).